UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **TOM TAYLOR BERRY** | **CIVIL ACTION NO. 3:10-cv-0554** |
| **LA. DOC #471960** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **MADISON PARISH, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Tom Taylor Berry, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 29, 2010. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC). He is incarcerated at the Madison Parish Detention Center (MPDC), Tallulah and he complains that excessive force was used against him when he was strip searched by Corrections Officers on July 27, 2009. He initially sued Officers Skinner and Hughes, Warden Shivers, and Sheriff Larry Cox. However, in an amended complaint filed on July 29, 2010, he dismissed Skinner, Shivers, and Cox. [Doc. #7] In the original complaint, he prayed for a transfer to another facility and an unspecified amount of money for "pain and suffering." This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted and as frivolous.

### *Background*

***1. Original Complaint [Doc. #1]***

At all times pertinent to this inquiry, plaintiff was an inmate in the custody of the LDOC; he

was incarcerated at the MPDC. In his original complaint plaintiff alleged that on July 27, 2009, he was awakened by Corrections Officer Skinner and ordered to place his hands on his head and walk to the sink area. When he arrived at the sink, Captain Hughes ordered him to his knees. Three minutes later, Hughes ordered plaintiff to stand and strip off his clothing. Hughes "... grabbed [his] right arm [and] twisted it behind [his] back." He ordered plaintiff to open his mouth; when plaintiff asked him why he was twisting plaintiff's arm, Hughes told him to be quiet that this "... was police business." Hughes then released plaintiff's arm and ordered plaintiff to lift his genitals and then to bend over so that a visual body cavity search could be conducted.

### 2. Amend Order [Doc. #6] and Response [Doc. #7]

On June 30, 2010 plaintiff was directed to amend his complaint to provide more specific information. Among other things, he was instructed to

> ... provide a detailed description of the events leading up to the strip search and, he should provide a detailed description of the events occurring during and after the search. Among other things he should state whether any other inmates were searched, and, whether the officers had grounds to suspect that weapons or contraband were being hidden on plaintiff's person. Finally, he should amend to describe in detail the nature of the injuries or harm he sustained as a result of the events of July 27, 2009... Doc. #6.

Thereafter, on July 29, 2010, plaintiff filed a single page hand-written response. He dismissed Corrections Officer Skinner, Sheriff Cox, and Warden Shivers from the suit because they had no direct responsibility in the violation of plaintiff's civil rights. With regard to the remaining defendant plaintiff merely alleged that he held Captain Hughes responsible "... for the violating of my civil rights in making me spread my buttocks. Having no probable cause to believe that I had any contraband on my person and did not find any on my person. Also for the verbal abuse that he used when strip searching me and for the unnecessary use of force that he used by twisting my arm when

I was not showing any signs of hostility." Plaintiff described no injury resulting from the encounter. [Doc. #7]

## Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a

3

constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff filed an original and amended complaint; he has been afforded the opportunity to provide more detailed facts in support of his claims and need not be permitted to amend the complaint again.

Plaintiff has alleged fault on the part of the remaining defendant, Captain Hughes, in three respects: (a) verbal abuse; (b) physical abuse; and, (c) strip search. Each claim has been analyzed under the standards set forth above.

### a. Verbal Abuse

Plaintiff complains that he was the object of verbal abuse on the part of Captain Hughes. Claims of verbal abuse are simply not actionable under §1983. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002).

### b. Excessive Force

Plaintiff accuses Hughes of using excessive force when he twisted plaintiff's arm. Such claims arise under the Eighth Amendment's prohibition of cruel and unusual punishment. In this context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth

Amendment is violated "whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Id.* at 9-10, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078 (1986). A *de minimis* use of force, such as a slap or a shove, does not implicate constitutional concerns. *Id.*; *Bell v. Wolfish*, 441 U.S. 520 (1979); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997) (bruised ear lasting for three days after guard twisted inmate's ear and held his arm behind his back was *de minimis* and did not state a claim for excessive force); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993) (inmate who suffered no injury when sprayed with a fire extinguisher was exposed to a *de minimis* use of force and his claim was properly dismissed as frivolous). Here, plaintiff was directed to amend his complaint to provide a more detailed description of the events and to describe the injury or harm he sustained as a result of the alleged violation of his rights.

In his amended complaint, he merely faulted Hughes for "... the unnecessary use of force that he used by twisting my arm..." Clearly, this was a *de minimis* use of force which does not implicate the Eighth Amendment.

### c. Body Cavity Search

Plaintiff complains that Hughes lacked probable cause to conduct a body cavity search. He thus implies that he was the victim of an unreasonable search in violation of his rights under the Fourth Amendment. Indeed, the Fourth Amendment does provide the correct standard for evaluating

inmate claims of unconstitutional strip searches and body cavity searches. *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir.1999) (citing *Elliott v. Lynn*, 38 F.3d 188, 191 n. 3 (5th Cir.1994); *United States v. Lilly*, 576 F.2d 1240 (5th Cir.1978)). However, a convict's Fourth Amendment protections are greatly limited in the context of prison searches; his rights are "diminished by the needs and exigencies of the institution in which he is incarcerated." The convicts Fourth Amendment rights must be balanced against the institutions legitimate penological concerns. *Moore*, 168 F.3d at 236-37, quoting *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir.1994).

The search of a convict's body cavity is not unreasonable *per se* under the Fourth Amendment. Such searches need not be predicated upon probable cause. In this context, the Fourth Amendment requires only that such searches be reasonable under all the facts and circumstances in which they are performed. In *Bell v. Wolfish*, the Supreme Court noted, "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Under this standard, the Court must strike a balance in favor of deference to the corrections officers' views of institutional safety versus the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner. *Id.* In this case, plaintiff was directed to describe the events leading up to the search and the events during and after the search; to state whether other inmates were searched; and to describe the injury sustained as a result of the allegedly unconstitutional behavior of Captain Hughes. In response he merely alleged that Captain Hughes was

responsible for violating plaintiff's civil rights "... in making me spread my buttocks having no probable cause to believe that I had any contraband on my person..." [Doc. #7] Of course, plaintiff's contention that Hughes lacked probable clause is conclusive, unsupported by any facts, and of no moment since probable cause is not necessary in this context. Further, the Court may presume, from the pleadings, that the search was, as described by Hughes, "police business" and therefore a valid exercise of authority serving a legitimate penological interest.

Finally, as previously noted, plaintiff has alleged no injury resulting from the alleged Fourth Amendment violation, yet he seeks compensatory damages for "pain and suffering." [Doc. #1, ¶V] Title 42 U.S.C. § 1997e(e) states, "No federal civil action may be brought by a prisoner ... for mental or emotional injury ... without a prior showing of physical injury." Plaintiff has alleged no physical injury resulting from the search itself, and therefore, his request for monetary damages for "pain and suffering" must seek compensation for mental or emotional injury. His failure to allege a physical injury precludes recovery and warrants dismissal of his complaint. *Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007).

### *Conclusion and Recommendation*

For the foregoing reasons,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's

objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, August 18, 2010.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**